**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

LARRY ETTEN,

        Plaintiff,

vs.

U.S. FOOD SERVICE, INC. and MAC
RISK MANAGEMENT, INC.,

        Defendants.

No. 05-CV-83-LRR

**ORDER**

_____

### TABLE OF CONTENTS

I.      **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.     **RELEVANT PRIOR PROCEEDINGS** . . . . . . . . . . . . . . . . . . . . . . . . **2**

III.    **JURISDICTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

IV.   **STANDARD OF REVIEW FOR SUMMARY JUDGMENT** . . . . . . . . . . . **3**

V.    **SUMMARY JUDGMENT FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**
        *A.*     *Plaintiff's Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
        *B.*     *Plaintiff's Injuries and Treatment* . . . . . . . . . . . . . . . . . . . . . *4*
        *C.*     *Reporting the Injuries and Claim Denial* . . . . . . . . . . . . . . . . . *7*
        *D.*     *Keith Grossman* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*
        *E.*     *Workers' Compensation Proceedings* . . . . . . . . . . . . . . . . . . . *8*

VI.   **THE MERITS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **11**
        *A.*     *The Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *11*
        *B.*     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *13*

VII.  **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **21**

# I. INTRODUCTION

The matter before the court is the Motion for Summary Judgment ("Motion") (docket no. 7), filed by Defendants U.S. Food Service, Inc. and MAC Risk Management, Inc.

# II. RELEVANT PRIOR PROCEEDINGS

On April 6, 2005, Plaintiff Larry Etten filed a Petition at Law and Jury Demand ("Complaint") against Defendants in the Iowa District Court in and for Linn County. Plaintiff's claim is based upon the administration of his workers' compensation claim. Plaintiff alleges that Defendants acted in bad faith when they denied his requests for payment for medical treatment, healing benefits and permanent partial disability benefits.

On May 6, 2005, Defendants removed the case to this court. Defendants invoked the court's diversity jurisdiction under 28 U.S.C. § 1332. On the same date, Defendants filed an Answer, in which they denied the substance of the Complaint.

On October 17, 2005, Defendants filed the instant Motion. On May 26, 2006, Plaintiff filed a Resistance. On June 12, 2005, Defendants filed a Reply.

In their Reply, Defendants request oral argument. Under the Local Rules, this request is untimely. Requests for oral argument must be made either in a motion for summary judgment or in the resistance thereto. LR 56.1(f). The court finds the Motion is fully submitted and oral argument is unnecessary. Therefore, the court turns to consider the Motion.

# III. JURISDICTION

Plaintiff is a resident and citizen of Iowa. Defendant U.S. Food Service, Inc. ("U.S. Food") is incorporated under the laws of the state of Delaware, and its principal place of business is in Maryland. Defendant MAC Risk Management, Inc. ("MAC") is incorporated under the laws of Delaware, and its principal place of business is in

Massachusetts. The amount in controversy, exclusive of interest and costs, exceeds $75,000. The court finds it has diversity subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(c)(1).

## IV. STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the record shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is genuine when 'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material when it is a fact that "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248. The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *Baer Gallery, Inc. v. Citizen's Scholarship Found. of Am.*, 450 F.3d 816, 820 (8th Cir. 2006) (citing *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)).

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see, e.g., Baum v. Helget Gas Prods., Inc.*, 440 F.3d 1019, 1022 (8th Cir. 2006) ("Summary judgment is not appropriate if the non-moving party can set forth specific facts, by affidavit, deposition, or other evidence, showing a genuine issue for trial."). The

nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "'Evidence, not contentions, avoids summary judgment.'" *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 578 (8th Cir. 2006) (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003)).

## V. SUMMARY JUDGMENT FACTS

Viewed in a light most favorable to Plaintiff, the nonmoving party,[1] and affording him all reasonable inferences, the facts are these:

### A. Plaintiff's Background

Plaintiff works for U.S. Food as a deliveryman. Plaintiff is forty-five years old, and he has worked at U.S. Food for eight years.

Plaintiff is a highly regarded employee. One of Plaintiff's supervisors, Ellen Goodman, believes Plaintiff is a "good employee" and an honest person. Goodman has never had a reason to doubt Plaintiff's credibility. Before the two injuries that are the subject of this lawsuit, Plaintiff had never missed a day of work in his life.

Plaintiff delivers food to U.S. Food's customers. Plaintiff's job is physically demanding, and he routinely lifts packages weighing up to ninety pounds. Plaintiff occasionally seeks treatment from a chiropractor for routine "maintenance adjustments" on his whole body. However, he has no history of back or radiating leg pain.

### B. Plaintiff's Injuries and Treatment

On Friday, February 28, 2003, at 5:00 a.m., Plaintiff slipped and fell on ice while he was delivering food to a Subway restaurant in Waterloo, Iowa. Plaintiff landed on his

---

[1] In their brief, Defendants claim that they are the nonmoving parties and are entitled to "every legitimate inference" in support of their Motion. Their brief is entitled "Defendants' Memorandum in Support of Resistance to Motion for Summary Judgment." It appears Defendants are confused as to the procedural posture of the case. Because Defendants filed the Motion, Plaintiff is the nonmoving party.

left side; his left hip, left shoulder and left elbow impacted the ground. Plaintiff felt immediate pain.

After laying on the ground in pain "for a little while," Plaintiff got up, took some aspirin and finished up the day's work. Plaintiff continued to feel pain on his left side throughout the day. Plaintiff did not think his slip and fall was serious and, therefore, did not immediately report anything to U.S. Food.

Plaintiff's pain progressively got worse over the weekend of March 1 and 2, 2003. Plaintiff experienced pain in his back and hip. Plaintiff made an appointment to see his chiropractor, Dr. Mike Powell, on Thursday, March 6, 2003, to see if he could help relieve his pain. Thursday was Plaintiff's first day off following his slip and fall.

Dr. Powell's treatment notes for March 6, 2003, state that Plaintiff subjectively complained of hip and shoulder pain due to a fall the prior week at work. The notes also reveal that Dr. Powell objectively found that Plaintiff experienced pain in the C7, T4, T5, L3, L5, SI, Sa, Hip and GH regions of the body. Dr. Powell told Plaintiff to return "PRN," i.e., on an as-needed basis.

Plaintiff's condition continued to deteriorate. The pain progressively got worse. Plaintiff began to feel pain radiate down his leg and lost feeling in his toes. Plaintiff continued to make deliveries for U.S. Food.

On Saturday, March 22, 2003, Plaintiff was not scheduled to work. On March 23, 2003, Plaintiff was in so much pain that he could not stand, sleep or move. That evening, Plaintiff arranged for a replacement to cover his route on March 24, 2003, and left messages with two of his supervisors to apprise them of his situation.

On March 24, 2003, Plaintiff had another appointment with Dr. Powell. Dr. Powell's treatment notes indicate that Plaintiff stated he "was good until 2 days ago—[left] leg pain with radiation to foot." Dr. Powell's treatment notes also indicate that Dr.

Powell found objective evidence of pain in the T3, T4, T12, L1, L5, SI, Hip, KN and AN regions of the body.

On March 26, 2003, Dr. Powell ordered that a lumbar MRI be taken of the L4-L5 and L5-S1 discs in Plaintiff's back at Mercy Hospital in Cedar Rapids, Iowa. In ordering the MRI, Dr. Powell stated that he was concerned about "lumbar disc disease" and "radiculopathy" due to a "[p]atient complaint" of "[p]rogressive lowback and hip pain-left."

On March 27, 2003, Plaintiff underwent the MRI. According to Dr. R.R. Gambach, the MRI revealed "[m]oderate size disc extrusion on the left at L4-5 with extension caudally along the posterior aspect of the upper L5 end plate into the left neural foramen" and "[m]ild disc bulging into the neural foramen at other levels as noted."

On April 1, 2003, Dr. Powell wrote Plaintiff a referral letter to Dr. Loren Mouw, a neurosurgeon. Dr. Powell thanked Dr. Mouw for agreeing to see Plaintiff. Dr. Powell stated that Plaintiff "has a history of occasional back pain, this recent episode began approximately one month ago with a fall at work. His low back and leg pain have been progressive." Plaintiff scheduled an appointment to see Dr. Mouw on April 3, 2003.

On April 3, 2003, Plaintiff fell again at work. Plaintiff was delivering food to the Crowne Royal Plaza, a U.S. Food customer, when he slipped and fell on a make-shift ramp while pushing a pallet with a pallet jack. As before, Plaintiff fell on his left side. Plaintiff suffered "approximately the same" amount of pain as he did after the first fall.

Also on April 3, 2003, Plaintiff went to his scheduled appointment with Dr. Mouw. Dr. Mouw's Neurosurgical Record indicates that Plaintiff

> presents with approximately a 5 week history of back and left leg pain. He states that he was delivering [food]. . . when he slipped and landed on his left side. He underwent chiropractic manipulation which was of no substantial benefit. He has had

no previous history of back or radicular symptoms.

Dr. Mouw examined Plaintiff and the MRI. Dr. Mouw reported that the MRI showed "a large herniated intervertebral disc at L4-5 eccentric to the left." Dr. Mouw concluded that Plaintiff had a "[h]erniated intervertebral disc L4-5 with neurologic deficit." Dr. Mouw recommended that Plaintiff undergo surgery. The surgery was scheduled for the next day.

On April 4, 2003, Plaintiff underwent back surgery. During the surgery, Dr. Mouw found "a large subcapsular disc herniation present." Dr. Mouw also found and removed disc fragments in Plaintiff's back. These disc fragments did not appear in Plaintiff's MRI.

The surgery was successful. On May 15, 2003, Plaintiff told Dr. Mouw at a check-up appointment that he had no significant back or leg pain. Approximately eight weeks after his surgery, Plaintiff returned to work as a deliveryman. Plaintiff continues to work for U.S. Food to the present date.

## C. Reporting the Injuries and Claim Denial

On March 23, 2003, Plaintiff reported his first slip and fall to U.S. Food. On April 3, 2003, Plaintiff reported his second slip and fall to U.S. Food.

U.S. Food and MAC are both subsidiaries of Koninklijke Ahold N.V. ("Ahold"). Ahold requires U.S. Food to employ MAC as its workers' compensation carrier. MAC handled Plaintiff's claims for payment for medical treatment, healing benefits and permanent partial disability benefits on behalf of U.S. Food. MAC alone makes the decision to accept or deny workers' compensation claims against U.S. Food.

When U.S. Food received notice of Plaintiff's claims, it forwarded them to MAC for evaluation. MAC assigned Plaintiff's claims to Kristen Coyle, a senior claims adjuster. Coyle has no degrees other than a high school diploma and no significant training in the medical field.

Through Coyle, MAC denied all of Plaintiff's claims and refused to pay any benefits to him. MAC never told Plaintiff why it denied his claims. Plaintiff had to call a toll-free number to find out that his claim had been denied.

In a deposition, Coyle noted that Plaintiff did not immediately report his first slip and fall to his employer. Coyle also complained that initially she was unable to obtain Plaintiff's medical records from Plaintiff's doctors.[2] When she received the records, she noted that Dr. Powell's treatment notes do not explicitly state that Plaintiff reported "back pain." Moreover, Coyle noted that Dr. Powell's March 24, 2003 treatment notes indicated that Plaintiff stated he "was good until 2 days ago." Coyle opined that, because Plaintiff did not work on March 22, 2003, his back injuries must have been non-work related. Coyle testified "[Plaintiff] could have been doing something at home. He could have been doing yard work. He could have been doing anything that would have triggered it."

### D. Keith Grossman

Keith Grossman, a former safety and security coordinator at U.S. Food, believes U.S. Food purposely prolonged and denied valid workers' compensation claims to save money. In a deposition, Grossman testified:

> [W]hen a person is maybe losing their house or losing their car, and suddenly, you know, these medical bills aren't getting paid by anyone, and there [are] liens on the property, they're a little bit more willing to sit down and settle their claim versus taking it to the last inning of the game.

On cross-examination, Grossman admitted he did not have any evidence to support his

---

[2] Coyle testified that, on April 25, 2003, she received Dr. Powell's March 6 and 24, 2003 treatment records, as well as his April 1, 2003 referral letter. She testified she did not receive Dr. Mouw's records until "sometime after June 6, 2003." The delay was solely attributable to Plaintiff's doctors and not Plaintiff himself.

conclusion that such a strategy existed, but reiterated his "perception" that such a "pattern" existed.

### E. Workers' Compensation Proceedings

On October 27, 2003, Plaintiff filed claims for workers' compensation benefits with the Iowa Workers' Compensation Commissioner based on his two slips and falls at work. On September 22, 2004, Jon E. Heitland, Deputy Workers' Compensation Commissioner ("Deputy"), held a hearing on Plaintiff's claim. Before the Deputy, U.S. Food argued that it rightly denied Plaintiff benefits because (1) he waited too long to report his first injury and (2) the injuries were not work related.[3]

On August 29, 2004, the Deputy issued a written opinion in which he rejected all of U.S. Food's defenses. First, the Deputy noted that Plaintiff was only required to report his injuries within ninety days, *see* Iowa Code § 85.23, and he reported his first injury within a month of its occurrence and the second injury on the very same day it happened. Second, the Deputy noted that Defendants' claim of a prior back injury was speculative and without any medical evidence. The Deputy wrote that U.S. Food did not "have a medical opinion that says [Plaintiff's] present condition is not related to his work injury, or that the work injury did not aggravate the prior condition." The Deputy found that

---

[3] In a response to an interrogatory in the workers' compensation proceeding, U.S. Food stated that it denied the first slip and fall claim because of "late reporting of an incident; medical records support pre-existing condition; chiropractor released claimant then notes indicate sudden onset weeks later." It stated it denied the second slip and fall claim "because the cause of disability and need for treatment are not related to alleged work injury. See records of Mike Powell, D.C. which indicate that herniated disc was present before 4/3/03." U.S. Food also answered: "Claim was initially denied due to lack of medical records supporting causal relationship/disability. Claimant denied any prior back problems. Once further medical information was obtained, it was noted that claimant had a long history of treatment."

Plaintiff was entitled to healing benefits (including payment for his past and future medical expenses) and permanent partial disability benefits. The Deputy assessed Plaintiff's disability at twenty percent.

The Deputy also found that Plaintiff was entitled to penalty benefits pursuant to Iowa Code § 86.13.[4] The Deputy wrote:

> Defendant denied liability for the first injury, denied causal connection of the back connection for the second injury. They based their denial of the first injury on a failure by claimant to report the injury for about a month. Even a cursory familiarity with workers' compensation cases would show that a delay between an injury and the onset of symptoms or the reporting of the injury to the employer is common. To base a denial of liability of a delay of under four weeks in reporting the injury is not reasonable.
>
> So, too, is it unreasonable to deny liability, as defendant has done for both injuries in this case, on the basis that claimant had a preexisting condition. Again, it is common for claimant[s] to have a preexisting condition that is either aggravated or accelerated by a work injury. To base a denial on this, defendant should have, at a minimum, some medical evidence indicating the work injury did not cause the condition and did not aggravate the condition. In this case, they do not. Defendant denied liability on specious arguments with no evidence to back them up. They have the obligation to show that their denial was reasonable, but they have not. Simply

---

[4] Iowa Code § 86.13 states: "If a delay in commencement or termination of benefits occurs without reasonable or probable cause or excuse, the industrial commissioner shall award benefits in addition to those payable under this chapter . . . up to fifty percent of the amount of benefits that were unreasonably delayed or denied." Iowa Code § 86.13. A "reasonable basis" exists if the claim is "fairly debatable." *Keystone Nursing Care Ctr. v. Craddock*, 705 N.W.2d 299, 307 (Iowa 2005) (citing *Christensen v. Snap-On Tools Corp.*, 554 N.W.2d 254, 260 (Iowa 1996)).

> putting forth an argument or a theory for denial is not enough;
> there must be some evidence showing the denial was
> reasonable. In addition, even if a valid reason for denial
> exists, it must be communicated to claimant, and in this case
> it was not.

The Deputy found U.S. Food did not have a "fairly debatable" reason for denying benefits and awarded Plaintiff $15,000 in penalty benefits for the unreasonable denial of healing benefits and permanent partial disability payments. Defendants did not appeal or seek judicial review of the Deputy's decision.

## VI. THE MERITS

### A. The Law

Under Iowa common law, to prove a first-party bad faith claim for denial of workers' compensation benefits Plaintiff must prove Defendants (1) had no reasonable basis for denying his claims and (2) knew or had reason to know that its denial or refusal was without reasonable basis. *Wilson v. Farm Bureau Mut. Ins. Co.*, 714 N.W.2d 250, 262 (Iowa 2006); *see, e.g., Wilson v. Liberty Mut. Group.*, 666 N.W.2d 163, 166 (Iowa 2003) (applying same standards to claim regarding denial of workers' compensation benefits). In the Motion, Defendants only challenge Plaintiff's ability to prove the first element of his bad faith claim.[5]

---

[5] In their Reply, Defendants claim *Bellville v. Farm Bureau Mutual Insurance Co.*, 702 N.W.2d 468 (Iowa 2005) changed the traditional legal analysis for first-party bad faith claims. Defendants state that, under "the general directed verdict rule" of *Bellville* and *Niver v. Travelers Indemnity Co.*, 412 F. Supp. 2d 966 (N.D. Iowa 2006), the court is required to grant summary judgment in favor of the defendant unless it would be willing to grant a hypothetical motion for summary judgment in favor of the plaintiff on his underlying workers' compensation claim.

The court does not read *Bellville* as broadly as Defendants suggest. Nowhere in

(continued...)

"In the workers' compensation context, a reasonable basis for denying a claim exists if the claim is 'fairly debatable.'" *Wilson*, 666 N.W.2d at 166 (citing *Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 396 (Iowa 2001)). More generally, the Iowa Supreme Court recently summarized the principles it applies in determining whether there is a reasonable basis necessary for the first element of a bad faith claim:

> A reasonable basis exists for denial of policy benefits if the insured's claim is fairly debatable either on a matter of fact or law. A claim is "fairly debatable" when it is open to dispute on any logical basis. Stated another way, if reasonable minds can differ on the coverage-determining facts or law, then the claim is fairly debatable.

> The fact that the insurer's position is ultimately found to lack

---

[5](...continued)

*Bellville* did the Iowa Supreme Court announce that it was adopting a general directed verdict rule. To the contrary, the Iowa Supreme Court rejected the general directed verdict rule in *Reuter v. State Farm Mutual Automobile Insurance Co.*, 469 N.W.2d 250, 253 (Iowa 1991). *See Reuter*, 469 N.W.2d at 254 ("We do not agree that the mere denial of a plaintiff's motion for directed verdict [on the policy claim] automatically establishes that the issue is 'fairly debatable.'"). *Bellville* did not expressly overrule *Reuter*; indeed, *Bellville* cited *Reuter* with approval on other grounds. Moreover, in *Wilson*, 714 N.W.2d at 262, a post-*Bellville* bad faith case, the Iowa Supreme Court did not mention such a sea-change in Iowa law.

Nor does *Niver* support Defendants' claim that *Bellville* adopted a general directed verdict rule. *Niver*, which the court notes is not controlling authority, *rejected* this very same argument for many of the same reasons noted above. *See Niver*, 412 F. Supp. 2d at 982 ("[T]he court finds that the *Bellville* decision did not establish 'new' law concerning a bad faith claim that is relevant to any issue in this case."); *see also id.* at 980 (noting that "nowhere [in *Bellville*] did the Iowa Supreme Court refer to a 'directed verdict' standard or intimate that, because the plaintiff was not entitled to a directed verdict on his policy claim, his bad faith claim failed as a matter of law")

Accordingly, the court analyzes this case according to the traditional standards stated by the Iowa Supreme Court, not a "general directed verdict rule."

merit is not sufficient by itself to establish the first element of a bad faith claim. The focus is on the existence of a debatable issue, not on which party was correct.

Whether a claim is fairly debatable can generally be decided as a matter of law by the court. That is because where an objectively reasonable basis for denial of a claim *actually exists*, the insurer cannot be held liable for bad faith as a matter of law.

*Id.* at 262-63 (emphasis in original, internal quotation marks omitted) (quoting *Bellville v. Farm Bureau Mut. Ins. Co.*, 702 N.W.2d 468, 473-74 (Iowa 2005). The court must "consider whether [the defendant] initially had a reasonable basis for denying [the plaintiff's] claim, and, if so, whether [the defendant] later continued to have a reasonable basis to deny [the plaintiff's] claim after its initial denial." *McIlravy v. N. River Ins. Co.*, 653 N.W.2d 323, 331 (Iowa 2002).

## B. *Analysis*

In their briefs to the court, Defendants claim they had an objectively reasonable basis for denying Plaintiff's workers' compensation claims because they had evidence that Plaintiff's injuries were not work related or, at the very least, caused only a temporary aggravation that completely resolved itself before March 22, 2004. In support of this assertion, Defendants point out that: (1) Plaintiff waited almost a month to report his first slip and fall to his employer; (2) in the intervening month, Plaintiff continued to work; (3) Plaintiff waited almost a week to seek treatment for his first slip and fall injury; (4) Plaintiff did not report any back pain or radiation of pain into his legs at his March 6, 2003 appointment with Dr. Powell; (5) Plaintiff did not return to Dr. Powell until March 24, 2003, and when he did, he "reported that on March 22, a Saturday that he did not work, that he experienced new pain and symptoms, that is, back pain radiating into his leg"; and

(6) Dr. Powell's referral letter states that Plaintiff had a history of occasional back pain.

The court holds that a reasonable jury could find that Plaintiff's claims for workers' compensation benefits were not "fairy debatable," and, therefore, Defendants denied his claims in bad faith.

Defendants did not have an objectively reasonable basis for denying Plaintiff's claim because he waited a month to report his first slip and fall to U.S. Food. Iowa law clearly provides that an employee has at least ninety days to report an injury to his or her employer. *See* Iowa Code § 85.23 (stating that, unless employer has actual notice of the injury, employee "shall give notice thereof to the employer within ninety days from the date of the occurrence of the injury" or "no compensation shall be allowed"). Coyle testified that, when she denied Plaintiff's claims, she was aware that employees in Iowa had ninety days to report.

Defendants did not have an objectively reasonable basis for denying Plaintiff's claim because he (1) waited six days until his first day off to seek medical treatment after his first slip and fall and (2) worked for almost a month after his first slip and fall. It is uncontested that Plaintiff had never before missed a day of work in his life. It is not unheard of for a conscientious employee to work while hurting. There is also evidence in the record establishing that it is common knowledge that a person suffering from a herniated disc may have a delayed onset and progressive development of back and radiating leg pain. In her deposition, Coyle admitted such a scenario was possible.

Defendants did not have an objectively reasonable basis for denying Plaintiff's claim as non-work related. A jury could find that Coyle, who has no formal education in the medical field, selectively read Dr. Powell's treatment notes and referral letter to Dr. Mouw. The jury could find Coyle unreasonably concluded that Plaintiff's injuries were not work related.

Dr. Powell's March 6, 2003 treatment notes are not medical evidence that Plaintiff did not suffer a herniated disc on February 28, 2003. Even if one could reasonably read the subjective comments portion of the those notes as constituting an admission by Plaintiff that he did not feel back pain on March 6, 2003, such a subjective comment is consistent with progressively developing pain due to the onset of a herniated disc. Likewise, even if Dr. Powell's March 24, 2003 treatment notes could be construed as an admission by Plaintiff that he did not start feeling back pain until March 22, 2003, Coyle's inference that he must have suffered a non-work related injury on that date is pure speculation. When they denied Plaintiff's claims, Defendants had no evidence that Plaintiff was "performing yard work" or "doing something at home" on that date. Indeed, when asked in her deposition if she had "any evidence that he did something at home that triggered that," Coyle's only response was that "I don't have any evidence that says he didn't." Lack of evidence is not evidence. On the other hand, when Defendants denied Plaintiff's claims, they knew that Plaintiff had suffered two slips and falls at work, had visited a chiropractor and a doctor to complain of various pains that began with the first slip and fall and that herniated discs sometimes present pain progressively.

It does not matter that Dr. Powell and Dr. Mouw procrastinated sending Coyle Plaintiff's medical records. For example, Coyle testified that, on April 4, 2003, she was asked to approve pre-authorization of benefits to Plaintiff for his surgery. She denied pre-authorization because she did not have Plaintiff's medical records and, therefore, could not determine whether his injuries were work related. While this initial denial may have been justified, the court must not only "consider whether [the defendant] initially had a reasonable basis for denying [the plaintiff's] claim," but also "whether [the defendant] later continued to have a reasonable basis to deny [the plaintiff's] claim after its initial denial." *McIlravy*, 653 N.W.2d at 331. Mere delay in receiving records cannot, on the facts of this

case, explain why Defendants did not ultimately pay for Plaintiff's injuries and medical care. *See id.*; *cf. Bilden v. United Equitable Ins. Co.*, 921 F.2d 822, 829 (8th Cir. 1990) (holding, under North Dakota law, that insurer was liable for bad faith denial of benefits in part because it "denied the claim before acquiring a complete set of medical records"). Defendants' continued denial of Plaintiff's claims after they received Plaintiff's medical records is the fighting issue in this case.

Defendants did not have an objectively reasonable basis for denying Plaintiff's claims due to an alleged pre-existing back injury. Defendants possessed no medical evidence that Plaintiff's pain resulted solely from a pre-existing back injury. Defendants' contention of a pre-existing back injury is supported only by an isolated and oblique reference in Dr. Powell's referral letter that Plaintiff had "a history of occasional back pain." Defendants ignored the rest of the same sentence, however, in which Dr. Powell stated "this recent episode began approximately one month ago with a fall at work." Defendants also ignored Dr. Mouw's April 3, 2003, Neurological Record, which more pointedly states that Plaintiff "has had no previous history of back or radicular symptoms."

In any event, Defendants possessed no hard evidence that Plaintiff's slips and falls were not the causes of his injuries; to the contrary, both Dr. Powell and Dr. Mouw linked Plaintiff's later onset of pain to his first slip and fall. Selectively reading a chiropractor's letter of referral that offhandedly mentions that Plaintiff "has a history of occasional back pain" in spite of a doctor's report which states that he did not have such a history and the universal conclusion that the recent episode began with the work injury is not an objectively reasonable basis for the conclusion that the injury must not have been work related.

Regardless of whether Defendants had an objectively reasonable basis for denying Plaintiff's claims because of an alleged pre-existing back injury, Plaintiff's claim was not

fairly debatable because Iowa's workers' compensation law clearly provides that an employee with a pre-existing condition may recover benefits so long as the work related injury materially caused the preexisting condition to aggravate or accelerate. *See, e.g., P.D.S.I. v. Peterson*, 685 N.W.2d 627, 630 (Iowa 2005) (discussing pre-existing heart condition).

> It is a well-established principle in workmen's compensation law if a claimant had a preexisting condition or disability, aggravated, accelerated, worsened or "lighted up" by an injury which arose out of and in the course of employment resulting in a disability found to exist, he would accordingly be entitled to compensation.

*Dep't of Transp. v. Van Cannon*, 459 N.W.2d 900, 904 (Iowa Ct. App. 1990) (citing *Musselman v. Cent. Tel. Co.*, 154 N.W.2d 128, 132 (Iowa 1967)). Again setting aside Defendants' speculative claim of a non-work related injury on March 22, 2003, Defendants had no medical evidence that Plaintiff's slips and falls did not materially cause the pain that necessitated surgery.

On the record presently before the court, it appears Coyle's reasons for denying Plaintiff's claims were based purely on speculative inferences from a highly selective reading of Plaintiff's medical records. In this respect, the case is similar to *Nassen v. National States Insurance Co.*, 494 N.W.2d 231 (Iowa 1992), in which the Iowa Supreme Court wrote:

> The "fairly debatable" test . . . required plaintiff to establish to the satisfaction of a reasonable fact finder that National States' decision to rescind her policy was not based on an honest and informed judgment. National States based its decision on a single reference found among several pages of hospital records. . . . National States ignored crucial information . . . and shunned any information that plaintiff's representatives sought to provide on this question. Under the

> circumstances, the question of bad faith was for the jury to
> decide.

*Nassen v. Nat'l States Ins. Co.,* 494 N.W.2d 231, 236 (Iowa 1992); *see also McIlravy*, 653 N.W.2d at 329 (stating that in the workers' compensation context, a first-party bad faith cause of action "arises from the knowing failure to exercise an honest and informed judgment on the part of a defendant from whom the employee seeks compensation due to work-related injuries") (citations and internal quotation marks omitted). Although there is no evidence that Coyle actively "shunned" information provided by Plaintiff, a jury could find her decisions were not the product of an honest and informed judgment and therefore find in favor of Plaintiff on his bad faith claim. *See id.*; *see also Dolan v. Aid Ins. Co.,* 431 N.W.2d 790, 794 (Iowa 1988) ("[I]t is appropriate . . . to determine whether a claim was properly investigated and whether the results of the investigation were subjected to a reasonable evaluation and review"). A jury could find Coyle knowingly or unreasonably ignored objective medical evidence indicating Plaintiff's injuries were work related in favor of a mere hunch that they were not. *See Nassen*, 494 N.W.2d at 236.

Notably, Coyle did not talk to Plaintiff's doctors or submit his medical records to an independent medical examiner, but instead relied on her suspicions in denying his claim. *See McIlravy*, 653 N.W.2d at 333 n.4 (noting that the defendant "rejected the medical opinion of the treating physician without explanation, and continued to rely upon its fact-based position . . . . However, [defendant] had no medical evidence to support this position, and had knowledge that the only medical evidence in the case rejected the position."). There is little indication in the record that Coyle conducted a good faith investigation or had any medical evidence to support the conclusions that Plaintiff was lying and his injuries were not work related. "Medical evidence need not be accepted, but

18

it can only be rejected based on valid, specific reasons." *Id.* (citing *Catalfo v. Firestone Tire & Rubber Co.*, 213 N.W.2d 506, 510 (Iowa 1973); *cf. Bilden v. United Equitable Ins. Co.*, 921 F.2d 822, 829 (8th Cir. 1990) (holding, under North Dakota law, that insurer was liable for bad faith denial of benefits in part because the insurer "never made direct contact with . . .. [the claimant's] doctors" and "did not consult with its own in-house medical personnel before denying the claim"). Unlike the classic case in which it is appropriate to grant summary judgment in favor of the defendant on the plaintiff's claim of bad faith, there is no evidence here that, at the time the insurer denied the claim, there was a battle-of-the-experts or conflicting evidence regarding compensability. *Cf. Bellville*, 702 N.W.2d at 475-79 (holding claim was fairly debatable because experts had different conclusions regarding cause of vehicle accident); *Reid v. Pekin Ins. Co.*, No. 04-CV-1030-LRR, ___ F. Supp. 2d. ___, 2006 WL 1594188, *9-*10 (N.D. Iowa 2006) (holding claim was fairly debatable where experts disagreed about cause of damage to building).

Coyle's handling of Plaintiff's claims appear to run afoul of Ahold's own manual for claims adjusters. The manual provides for a "three-point contact" with the employee, the employer and the medical provider before the adjuster makes a decision on compensability. According to the manual, "[t]he medical provider is asked to comment on the history of the injury given by the employee and to comment on any noted pre-existing conditions." Grossman testified he "told [Coyle] that we really needed to investigate this claim a little closer."[6] A jury could find these failures to comply with

_____

[6] Coyle's supervisor wrote in his adjuster's notes that:

With regard to the denial, are we hoping for a medical opinion on [the causal relationship] of the [scheduled surgery] to the 2/28/03 incident or to a work related incident in general?

(continued...)

19

Ahold's manual as indicative of bad faith, insofar as it is evidence that Defendants denied Plaintiff's claims unreasonably. *See Bilden*, 921 F.2d at 829 (holding insurer liable because the insurer's "conduct in handling [the] claim was generally unreasonable and failed to conform to industry standards").

The court recognizes that, "[i]n a first-party bad faith claim, 'an imperfect investigation, standing alone, is not sufficient cause for recovery if the insurer in fact has an objectively reasonable basis for denying the claim.'" *Sampson v. Am. Standard Ins. Co.*, 582 N.W.2d 146, 151 (Iowa 1998) (quoting *Reuter v. State Farm Mut. Auto. Ins. Co.*, 469 N.W.2d 250, 254-55 (Iowa 1991)). Although the hiring of an expert or an independent medical examination is not required to avoid a finding of bad faith, such a failure is probative of the adequacy of Defendants' investigation and whether Plaintiff's claim was fairly debatable. *See id.* Based on the summary judgment record presently before the court, a jury could find Defendants did not conduct an adequate investigation into Plaintiff's medical condition and conclude Defendants lacked an objectively reasonable basis for denying Plaintiff's claims. In other words, a jury could find that Defendants' failure to investigate Plaintiff's claims "went to the very foundation of the basis for its denial." *See McIlravy*, 653 N.W.2d at 333 (holding there was a jury question for bad faith when defendant failed to conduct investigation).

Accordingly, the court holds that a reasonable jury could find that Plaintiff's claims for workers' compensation benefits were not "fairy debatable." A jury could find

---

[6](...continued)

> Unless we raise a contrary medical etiology or a factual/legal basis for denial, the neuro[surgeon] is likely to find a causal relationship] to one of the [slip and falls]. Let's do our homework here to support the denial.

Defendants denied Plaintiff's claims in bad faith. Accordingly, the court shall deny the Motion.

## VII.  CONCLUSION

Defendants' Motion for Summary Judgment (docket no. 7) is **DENIED**. This matter shall proceed to a trial by jury as scheduled.

**IT IS SO ORDERED.**

**DATED** this 4th day of August, 2006.

LINDA R. READE
JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA